UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-cr-218 (ECT/BRT)

UNITED STATES OF AMERICA,

Plaintiff,

v.

REYEL DEVON SIMMONS,
a/k/a Rey Reeves

Defendant.

**PLEA AGREEMENT AND
SENTENCING STIPULATIONS**

The United States of America and Reyel Devon Simmons (hereinafter referred to as the "Defendant") agree to resolve this case on the terms and conditions that follow.   This plea agreement binds only the Defendant and the United States Attorney's Office for the District of Minnesota.   This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.      **Charges**. The Defendant agrees to plead guilty to Counts 1 and 2 of the Indictment, which charge him, respectively, with Impersonating an Officer of the United States (18 U.S.C. § 912) and being a Felon in Possession of Firearms (18 U.S.C. § 922(g)(1)). The United States agrees to dismiss Counts 3–5 of the Indictment at sentencing.   The United States further agrees not to charge the Defendant with any other crimes associated with the conduct described herein.

2.      **Factual Basis.** The parties agree on the following factual basis as to Counts 1 and 2 of the Indictment.   The Defendant stipulates and agrees that were

the matter to go to trial, the United States would prove the following facts beyond a reasonable doubt.

*Counts 1 and 2:*

a. Except as otherwise noted herein, at all relevant times, the Defendant resided in the State and District of Minnesota. Except as otherwise noted, the conduct described herein took place in the State and District of Minnesota.

b. From on or about January 1, 2021 until on or about September 20, 2021, the Defendant pretended to be and held himself out as a law enforcement officer acting under the authority of the United States, specifically, a special agent with the Department of Homeland Security (DHS). One purpose in doing so was to cause an individual, B.A., to follow a course of action and inaction, that is, to enter and maintain a romantic relationship with him.

c. At no time was the Defendant ever a sworn law enforcement officer, whether at the federal, state, or local level. At no time was the Defendant ever employed by, or imbued with the authority of, any federal agency of the United States. Despite knowing this reality, the Defendant engaged in an extensive campaign to cause others to believe he was in fact a DHS special agent or other law enforcement officer.

d. In part to enable his impersonation, the Defendant established a profile on the social media platform TikTok. In his profile, which was publicly available, the Defendant regularly held himself out to be a law enforcement officer, specifically a DHS special agent. The Defendant commented on his own profile, and those of other TikTok users, in ways that implicitly and explicitly suggested that he was a DHS special agent. The Defendant posted pictures of himself in what appeared to be law enforcement attire, including body armor with law enforcement markings, a DHS badge, and holding firearms, including an assault rifle and a pistol. Below are some examples of these pictures:

2





e. The Defendant's impersonation and fraud was not limited to online activity. The Defendant regularly wore clothing that resembled the sort of tactical or official apparel worn by law enforcement, including t-shirts that bore a DHS logo specific to the Homeland Security Investigations (HSI) division. Below is a photograph of the Defendant wearing the aforementioned shirt:



f. The Defendant regularly carried a backpack, which he described as his "go bag." A go bag is a term used by some law enforcement officers to describe a bag they keep with them when off duty, in case an emergency or unexpected situation should arise. In such a bag, law enforcement will keep items like their badge, firearm, and clothing identifying them as an officer. The Defendant's go bag bore a DHS emblem and is pictured below:

4



Inside the bag, the Defendant often kept a loaded Glock model 22 .40 caliber semiautomatic handgun, one or more loaded magazines for that firearm, one or more badges (including one purporting to be DHS-HSI), and other items suggesting he was a federal law enforcement officer. As described further below, in 2007, the Defendant was convicted of a felony offense and was therefore prohibited from possessing a firearm, a fact of which he was aware. Nonetheless, the Defendant regularly possessed the Glock handgun. Below are pictures of the firearm and other items found inside the Defendant's go bag upon his arrest:





**g.** The Defendant drove a pickup truck which he outfitted with a radio, public announcement system, siren, and light package, similar to those equipped on some law enforcement vehicles. Below are pictures:





h.  When applying for jobs, the Defendant represented on his resume and applications that he previously worked for the "U.S. Department of Defense/U.S. Department of Homeland Security/FEMA" where he had assisted "local civil law Enforcement/Government Agency on Undercover assignments throughout the Country and States." However, to avoid being found out, the Defendant claimed that his work for the federal government was "classified" and could not be discussed. None of this was true and the Defendant knew it was not true. The purpose of the Defendant's misrepresentations in this context was to hired by employers who might not otherwise hire him.

i.  In approximately January 2021, the Defendant was contacted by B.A. via his TikTok profile. B.A. expressed interest in communicating with the Defendant in part because she perceived him to be a federal law enforcement officer. The Defendant believed that women, like B.A., would find him more attractive and trustworthy if they believed he was a law enforcement officer. The Defendant desired this sort of attention from women, including B.A. Therefore, one reason the Defendant held himself out as and pretended to be a federal law enforcement officer, specifically a DHS special agent, was to attract attention from women, including B.A.

j.  The Defendant was concerned that B.A. would learn the truth about him if she knew his real name, so he used an alias, "Rey Reeves."

k.  In February 2021, the Defendant and B.A. entered a romantic relationship. Besides a significant amount of online and telephone communication, on multiple occasions, B.A. traveled to Minnesota to visit the Defendant and the Defendant traveled to Georgia to visit B.A. During their relationship, the Defendant repeatedly represented he was a DHS special agent. The Defendant regaled B.A. with tales of his undercover assignments as a DHS special agent, taking down child sex trafficking rings and conducting other dangerous missions. The Defendant dressed the part, wearing the aforementioned clothing, carrying the go bag, driving the pickup truck, and often openly carrying his firearm and DHS-HSI badge. The Defendant's intent in this conduct was to cause B.A. to enter and maintain a romantic relationship with him.

l.  In May 2007, in Adams County, Colorado, the Defendant was convicted of felony menacing, a crime that was punishable by imprisonment for a term exceeding one year. As a result of this conviction, the Defendant

8

was prohibited from possessing firearms or ammunition, a fact of which he was always aware thereafter.

m. Despite his prior felony conviction and knowing he was prohibited from possessing firearms and ammunition, on or about September 20, 2021, the Defendant knowingly possessed, in and affecting interstate and foreign commerce, the following firearms:

| Description | Serial Number |
|---|---|
| Glock, Model 22, .40 caliber semi-automatic handgun | ERY405 |
| Spike's Tactical Rifle, Model ST15, multi-caliber | NSL121359 |
| Hi-Point, Model JCP, .40 caliber semi-automatic handgun | 755735 |
| Hi-Point Rifle, Model 4095TS, .40 caliber | H70792 |
| Springfield Rifle, Model 1903 Mark I, 30-06 caliber | 1127310 |
| Savage Rifle, Model 110 BA Stealth, .338 Lapua caliber | N081085 |
| Mossberg Rifle, Model 715T, .22 caliber | ESH4323115 |

*Relevant conduct and additional facts:*

n. The Defendant admits he also possessed the following items:

- A DPMS Rifle, Model A-15, .223/5.56mm caliber
- Four homemade silencers fashioned to fit one or more of the firearms the Defendant possessed
- Detonating cord containing the explosive pentaerythritol tetranitrate (PETN)
- A blasting cap
- Bullet proof/resistant vests that bore emblems and wording associating them with law enforcement, including the DHS in particular
- Thousands of rounds of ammunition
- Badges purporting to be issued by various law enforcement agencies
- Clothing, apparel, and bags bearing emblems, insignia, or wording that associated them with law enforcement
- A camouflage ghille suit of the type often used by law enforcement and military snipers
- A U.S. Navy dress uniform to which were affixed a Navy SEAL trident and numerous ribbons associated with various combat deployments and honors.

o. The Defendant admits that since at least 1992, he has impersonated and falsely claimed to be a law enforcement officer on numerous occasions. The Defendant was arrested for and charged with crimes related to his

impersonation of law enforcement officers on multiple occasions.  In May 2007, the Defendant was convicted of felony menacing after he pulled what appeared to be a real gun (but was in fact a BB gun), confronted the driver of a vehicle that struck the Defendant's car, repeatedly represented that he was a "federal agent," detained the driver, assaulted a passenger of that vehicle when he confronted the Defendant, and made multiple declarations to the gathering crowd that he was a federal agent, all while dressed in attire suggesting he was a law enforcement officer. Despite these arrests and the aforementioned felony conviction, the Defendant continued his impersonation of law enforcement.  At all times, the Defendant knew that he was not in fact, and had never been, a sworn law enforcement officer of any kind.  For instance, below is a picture the Defendant sent a woman in Colorado in approximately 2017, at which time he was pretending to be a federal Immigration and Customs Enforcement (ICE) officer:



**p.** The Defendant admits that for many years, he impersonated and falsely claimed to be a member of the United States military, specifically, a U.S. Navy SEAL. However, the Defendant has never been a member of the U.S. military and especially has never been a Navy SEAL. Nonetheless, the Defendant has numerous tattoos associated with the U.S. military and in particular, the Navy SEALs. On multiple occasions, the Defendant sent pictures of him purportedly in his Navy SEAL gear to other people. For instance, below is a picture Simmons doctored (by photo shopping his face over that of an actual U.S. military service member) and sent to B.A. in 2021 as part of his misrepresentations to her that he had been a Navy SEAL:



**3.** **Waiver of Pretrial Motions.** The Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of this

Agreement, and based upon the concessions of the United States, the Defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions or further litigate those he has filed, including withdrawing those motions and/or waiving the appeal of any issue raised in those motions.

4.     **Waiver of Constitutional Trial Rights.**  The Defendant understands that he has the right to plead not guilty and go to trial.  At trial, the Defendant would be presumed innocent, have the right to a jury trial or, in certain circumstances, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination.  By pleading guilty, the Defendant knowingly, willingly, and voluntarily waives each of these rights, except the right to counsel.  The Defendant understands that by pleading guilty, he is admitting his guilt, and, if the Court accepts the guilty plea, he will be adjudged guilty without a trial.

5.     **Collateral Consequences.**  The Defendant understands that because of his conviction, he could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to possess firearms, the right to vote, the right to hold public office, and the eligibility for federal benefits.

6.     **Statutory Penalties**.  The parties agree that Counts 1 and 2 of the Indictment carry statutory penalties of:

*Count 1 – Impersonating an Officer of the United States*

    a.     a maximum term of three years in prison (18 U.S.C. § 912);

b.   a supervised release term of one to three years (18 U.S.C. § 3583(k));

c.   a criminal fine of up to $250,000 (18 U.S.C. § 3571(b)(3));

d.   a mandatory special assessment of $100.00 (18 U.S.C. § 3013(a)(2)(A)); and,

e.   restitution to the victims of the Defendant's crime (18 U.S.C. § 3663).

*Count 2 – Felon in Possession of Firearms*

a.   a maximum term of ten years in prison (18 U.S.C. §§ 921(g)(1), 924(a)(2));

b.   a supervised release term of one to three years (18 U.S.C. § 3583(k));

c.   a criminal fine of up to $250,000 (18 U.S.C. § 3571(b)(3));

d.   a mandatory special assessment of $100.00 (18 U.S.C. § 3013(a)(2)(A)); and,

e.   restitution to the victims of the Defendant's crime (18 U.S.C. § 3663).

7.   **Revocation of Supervised Release**.  The Defendant understands that if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

8.   **Guideline Calculations**.  The parties acknowledge that the Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*.  Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing.  The parties also acknowledge that the

Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

*Count 1 – Impersonating an Officer of the United States (18 U.S.C. § 912)*

a. **Base Offense Level**:  The parties agree that the base offense level of the Defendant impersonating an officer of the United States is **6**. U.S.S.G. § 2J1.4(a).

b. **Specific Offense Characteristics**:  The parties agree that no specific offense characteristics apply.

*Count 2 – Felon in Possession of Firearms (18 U.S.C. § 921(g)(1))*

c. **Base Offense Level**:  The parties agree that the base offense level for the Defendant being a felon in possession of firearms is **20**. U.S.S.G. § 2K2.1(a)(4)(b)(i).

d. **Specific Offense Characteristics**:

i. The parties agree that the offense level should be increased by an additional **4** levels because the Defendant possessed between eight and twenty-four firearms. U.S.S.G. § 2K2.1(b)(1)(b).

ii. The parties agree that the offense level should be increased by an additional **2** levels because the offense involved a destructive device. U.S.S.G. § 2K2.1(b)(3)(B).

iii. The parties agree that the offense level should be increased by an additional **4** levels because the Defendant possessed at least one of the firearms in connection with another felony offense. U.S.S.G. § 2K2.1(b)(6)(B).

iv. The parties agree that no other specific offense characteristics apply.

*Determining the combined Guidelines calculation:*

e. **Chapter Three Adjustments**:

i. Grouping:  The parties agree that the Defendant's counts of conviction, Counts 1 and 2, group for the purpose of determining his Guidelines because impersonation (Count 1) is the basis for

applying the specific offense characteristic for possession of a firearm in connection with another felony as to Count 2. U.S.S.G. § 3D1.2(c).

    **ii.**  Acceptance of Responsibility: The parties agree that if the Defendant (1) provides full, complete, and truthful disclosures to the United States Probation Office, including financial information; (2) testifies truthfully during the change of plea and sentencing hearings; (3) complies with this Agreement; and (4) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, they will recommend that the Defendant receive a **two-level reduction** for acceptance of responsibility under U.S.S.G. § 3E1.1(a). Furthermore, assuming the Defendant engages in no acts inconsistent with his acceptance of responsibility between the time this Agreement is signed and his sentencing, as determined in the sole discretion of the United States, the United States agrees to move for an **additional one-level reduction** at sentencing. U.S.S.G. § 3E1.1(b).

    **iii.**  The parties agree that no other Chapter 3 adjustments apply.

**The Defendant's total adjusted offense level is <u>27</u> (20 + 4 + 2 + 4 - 3 = 27).**

**f.**  **Criminal History Category.** Based on information available at this time, the parties believe that the Defendant's criminal history category is **<u>III</u>**. U.S.S.G. §§ 4A1.1 and 4A1.2. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The Defendant's actual criminal history and related status (which might impact the advisory range of imprisonment) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. If it is determined that Defendant's criminal history different than III that will <u>not</u> be a basis to withdraw from this plea agreement.

**g.**  **Advisory Guideline Range.** If the adjusted offense level is **<u>27</u>**, and the criminal history category is **<u>III</u>**, then the advisory Guidelines range is 87–108 months of imprisonment. U.S.S.G., Chapter Five, Part A.

**h.**  **Fine Range.** If the adjusted offense level is **<u>27</u>**, the fine range is $25,000 to $250,000. U.S.S.G. § 5E1.2(c)(3).

   **i.**  **Supervised Release.** The Sentencing Guidelines require a term of supervised release of at least one year and up to three years. U.S.S.G. §§ 5D1.2(b)(2) and 5D1.2(c); 18 U.S.C. § 3583(k).

   **j.**  **Sentencing Recommendation and Departures**. In addition to the Guidelines calculation contained herein, the parties agree to the following sentencing recommendations:

     **i.**  The parties reserve the right to move for departures and/or variances from the Guidelines range, and to oppose such a motion from the other side.

     **ii.**  The parties agree to jointly recommend a three-year term of supervised release. They further agree that the Defendant's supervised release should contain the following conditions: (1) that the Defendant submit to a mental health assessment and if treatment is recommended, that he participate in mental health treatment and follow the recommendations of his provider(s); (2) that the Defendant submit to a substance abuse assessment and if treatment is recommended, that he participate in substance abuse treatment, as directed by his supervising officer; (3) that the Defendant not possess any item that purports to be associated with any law enforcement agency, or items that are otherwise commonly used by law enforcement or the military, or intended to resemble the same or give such an impression (e.g., body armor, tactical helmets, tactical masks, laser sights, scopes, badges, tasers or stun guns, paintball guns, airsoft, pellet, or BB guns, military uniforms, military badges, ribbons, or medals, camouflage clothing or apparel, etc.); (4) the Defendant may not represent himself to be a member/officer of, or that he is in any way affiliated with, any law enforcement agency or any branch of the U.S. military; and (5) that the Defendant stay away from and have no contact, directly or indirectly, with B.A. and her family.

**9.**    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court

may also depart from the applicable Guidelines range.  If the Court determines that the applicable guideline calculations or the Defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

**10.    Special Assessment**.  The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the Defendant is convicted.  U.S.S.G. § 5E1.3.  The Defendant agrees to pay the $200.00 ($100 for each felony conviction) special assessment at the time of sentencing.

Any assessment imposed shall be paid through the Office of the Clerk of the District Court by bank or cashier's check or money order made payable to the "Clerk, United States District Court."

**11.    Restitution**.   The Defendant agrees and recommends that he be ordered to pay restitution to the victims of his crime, whether or not those victims are named in this Agreement or in the Indictment.  *See* 18 U.S.C. § 3663(a)(3).  The Defendant further agrees and commits to pay restitution as ordered by the Court.

At this time, no victim has made a claim for restitution.  However, the Defendant is aware that the United States and/or the United States Probation Office will present his victims with the opportunity to submit claims for restitution.  Should any victim submit such a claim that the United States and the Court deem valid, the Defendant agrees and recommends that the Court order he pay restitution in that amount.  The parties will update the Court, no later than two-weeks prior to sentencing, whether any victim has submitted a claim for restitution.

The Defendant represents that he will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest.  The Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court.

12.  **Forfeiture.**  The Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c) any firearms and associated accessories, and ammunition involved in or used in connection with the counts of conviction, including, but not limited to, the firearms, destructive devices, accessories, and ammunition seized from his person, personal property, workspace, pickup truck, and the property at 62539 185th Avenue in Dodge Center, Minnesota, on September 20, 2021.  This includes, but is not limited to:

| Description | Serial Number |
| --- | --- |
| Glock, Model 22, .40 caliber semi-automatic handgun | ERY405 |
| Spike's Tactical Rifle, Model ST15, multi-caliber | NSL121359 |
| Hi-Point, Model JCP, .40 caliber semi-automatic handgun | 755735 |
| Hi-Point Rifle, Model 4095TS, .40 caliber | H70792 |
| Springfield Rifle, Model 1903 Mark I, 30-06 caliber | 1127310 |
| Savage Rifle, Model 110 BA Stealth, .338 Lapua caliber | N081085 |
| Mossberg Rifle, Model 715T, .22 caliber | ESH4323115 |
| DPMS Rifle, Model A-15, .223/5.56mm caliber | FH33438 |
| Four homemade silencers, all made of black metal and measuring between approximately nine and eleven inches in length | N/A |
| Detonating cord containing pentaerythritol tetranitrate (PETN) | N/A |
| A blasting cap | N/A |

The United States reserves its right to seek a money judgment forfeiture, to forfeit substitute assets, and to forfeit any additional directly forfeitable property.

The Defendant further agrees to the administrative forfeiture of, and relinquishes and gives up, pursuant to 26 U.S.C. § 5872 and 18 U.S.C. § 1028(b), any right, title, interest, or claim he has in any of the property or items seized from his person, personal property, workspace, pickup truck, and the property at 62539 185th Avenue in Dodge Center, Minnesota, on September 20, 2021, as property used or intended to be used to commit the offenses of conviction. This includes, but is not limited to, the following items:

| Description | Identifier (if applicable) |
|---|---|
| Four (4) light bars | |
| Vehicle siren | |
| Misc. firefighter gear including license plates, three (3) firefighting connectors, one firehose valve, fireman pants, and hose | |
| CB radio | |
| Ghille suit | |
| Motorola portable radio | |
| Compound bow with arrows | |
| Spent shell casing | |
| Two (2) yellow journals | |
| Extech digital sound level meter | |
| CFM Master II device | |
| Misc. tactical gear and clothing including duffel bags, helmet, belts, vests (including bullet proof/resistant), boots, padding, flashlights, a wristwatch, pants | |
| UX Umarex fuel air rifle | |
| Misc. U.S. Navy and other military accessories and paraphernalia including a U.S. Navy dress uniform with medals and ribbons, a SEALs sign, patches, a GI Joe SEAL doll, bell, dog tags, ring, and paperwork | |
| Smoke balls | |
| Hard hat and safety sign | |
| Patches, coins, and clothing depicting various law enforcement and military agencies and/or operations, or that reference law enforcement | |

| | |
|---|---|
| generally (e.g., containing lettering that says "Police" or "Agent") | |
| Various articles of camouflage patterned clothing | |
| Operation Front Range jacket | |
| Oxygen cylinders with masks and clear cases | |
| Six (6) handheld radios | |
| Gas detection meter | |
| Elite II Beretta air gun | |
| Knives | |
| Motorola radio | |
| iTarget bullseye and scope | |
| Typhoon drone with accessories and case | |
| CDC COVID-19 vaccination cards | |
| Spotting scope | |
| Binoculars | |
| Military style survival kit | |
| Radio earpieces | |
| "Fugitive Recovery Agent" badge | |
| iTarget lasers | |
| Masterbrand stun gun | |
| Black expandable baton with case | |
| Black case containing syringes that hold an unknown substance | |
| Black backpack with US Department of Homeland Security emblem on it | |
| U.S. Department of Homeland Security badge | |
| Orleans Parish Assistant District Attorney badge | |
| FEMA identification card | |
| TWIC identification card | |
| Compaq Presario computer | SN: 4CE00102HV |
| Acer Inspire laptop | SN:LXRKJ02027147129EF1601 |
| Dell Latitude 7490 laptop | SN:9H7FPQ2 |
| Dell Latitude 7490 laptop | SN:4HGCWT2 |
| Apple Macbook – white | SN: 45112ESHF5W |
| Apple iPad – silver | SN: F9FPC8YNFPFQ |
| Apple iPad – red | |
| Apple iPod – 160GB – silver | |
| Apple iPhone – black | |
| Cannon Power Shot Elph 1301S camera | SN: 692032004353 |
| LG cellphone with cracked screen – black | |
| Motorola Moto E cellphone | IMEI: 351638114983184 |

| | |
|---|---|
| Samsung Galaxy Note 9 cellphone | IMEI: 358621093030303 |
| Samsung LAXY Note Edge – black | SN: R38FB0WA2VV |
| Transcend Store Jet – 500GB | |
| Numerous thumb/flash drives | |
| Numerous SD cards | |

The Defendant retains his claim to and interest in the following items, which will be returned to him or his counsel following his sentencing:

| Description | Identifier (if applicable) |
|---|---|
| Defendant's US passport | |
| Colorado court records | |
| Photos of the Defendant | |
| South Dakota Department of Labor Relations paperwork | |

The Defendant agrees that the Unites States may, at its option, forfeit such property described above through civil, criminal, or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in such property. The Defendant waives all statutory and constitutional defenses to this forfeiture and consents to the destruction of the firearms, ammunition, and accessories.

**13.     Waivers of Appeal and Collateral Attack.**  The Defendant hereby waives the right to appeal any non-jurisdictional issues.  This appeal waiver includes, but is not limited to, the Defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statute(s) to which the Defendant is pleading guilty.  The parties agree, however, that excluded from this waiver is an appeal by the Defendant of the substantive reasonableness of a term of imprisonment above 87 months.  The Defendant also waives the right to petition under 28 U.S.C. § 2255, except based upon a claim of ineffective assistance of

counsel. The Defendant has discussed these rights with the Defendant's attorney. The Defendant understands the rights being waived, and the Defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence, except that it may appeal the substantive reasonableness of a sentence consisting of less than 87 months' imprisonment.

14.   **FOIA Waiver.**  In exchange for concessions made by the United States, the Defendant hereby waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act (FOIA) (5 U.S.C. § 552) and the Privacy Act of 1974 (5 U.S.C. § 552A).

15.   **No Contact.**  The Defendant agrees that he will have no contact with B.A. and her family, whether directly or indirectly, from the signing of this Agreement through any period of incarceration and during any period of supervised release. The Defendant understands and agrees that if he contacts B.A. or her family, it will constitute a violation of this Agreement, and if he were on supervised release, a violation of the conditions of his release.

16.   **Complete Agreement.**  This Agreement, along with any agreement signed by the parties before entry of a plea, is the entire agreement and understanding between the United States and the Defendant. The Defendant enters into this Agreement after discussing it with his counsel and with full knowledge of

its terms.  The Defendant affirms that he is entering this Agreement voluntarily and

has not been threatened, coerced, or unduly influenced in his decision.


Date: January 21, 2022

CHARLES J. KOVATS, JR.
Acting United States Attorney

BY:   ALEXANDER D. CHIQUOINE
Assistant U.S. Attorney


Date: January 21, 2022

REYEL DEVON SIMMONS
Defendant


Date: January 21, 2022

JAMES BECKER, ESQ.
Assistant Federal Defender
Counsel for Defendant